**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**AT ROCK ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Criminal No.  10-40091 |
| RONALD ALAN SEIVER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT**
**AND COMMENTARY ON SENTENCING FACTORS**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to defendant Seiver's Objections to Presentence Report and Commentary on Sentencing Factors.

In his Sentencing Memorandum, the defendant makes several fact based objections, arguing that some of the information contained in The Offense Conduct section of the Presentence Report (PSR) lacks sufficient indicia of reliability to support its probable accuracy. The defendant also raises the argument that the guideline calculations for Child Pornography offenses under United States Sentencing Guideline (U.S.S.G.) § 2G2.2 are fundamentally flawed and amount to impermissible double counting, and specifically objects to the imposition of increases in the offense level for specific offense characteristics, including possession of materials involving prepubescent minors, possession of materials portraying sadistic or masochistic conduct, and the use of a computer device in the commission of the offense.  Finally, the defendant objects to the imposition of a five-level enhancement for engaging in a pattern of activity involving prohibited sexual conduct, once again arguing that the increase amounts to

impermissible double counting.  The defendant concludes his Sentencing Memorandum by asking the Court to sentence him to a term of imprisonment of 180 months, which is a 60% variance from the Guideline range of 480 months.

For the reasons set forth in greater detail below, the Government believes that the defendant's objections are unavailing and should be rejected.  Moreover, the Government strenuously objects to any downward variance in this case.  The extremely aggravating facts surrounding these crimes demand a guideline range sentence of 480 months.

The proper application of the Sentencing Guidelines results in a final offense level of 44 with a criminal history category of I.  Those factors would establish a guideline range term of imprisonment of Life; however, the statutory maximums for Counts I and II cap the term of imprisonment at 480 months (120 months on Count I, Possession of Child Pornography; and 360 months on Count II, Sexual Exploitation of a Child).

## I.  FACTUAL BACKGROUND

In 2008 (exact date unknown), the defendant met a 15-year old girl named Brittany (referred to in the PSR with the initials B.M.) through an online video game called "World of Warcraft."[1]  At the time, Brittany was residing in Illinois with her mother.  Although 27-years old at the time, the defendant initially told Brittany that he was a teenager, and sent her a photograph of a teenage boy in support of this claim.  The two continued their online communication, but also began to communicate by telephone.  It was not long before the

---

[1]The 15-year old female's full name is known to the Government, but has been replaced for this public filing with the name "Brittany."

defendant started showering Brittany with gifts, including flowers, an iPod, jewelry, thong underwear, and other clothing items.

Eventually, the defendant traveled to meet Brittany in person.  The defendant purchased a motel room, where he engaged in vaginal and oral sex with the 15-year old girl. The defendant took photographs and video of some of his sexual encounters with Brittany. The defendant made at least three trips to visit Brittany during 2008, with at least two of those trips resulting in sexual contact with Brittany.

In October of 2008, the defendant sent 10 dozen roses and two balloons to Brittany for her 16th birthday.  The roses, which cost over $200, were accompanied with the following message:

> *I love you more than anything baby girl!*
> *I hope you have a wonderful birthday!*
> *Love,*
> *Your Baby Boy*

In late 2008, Brittany told the defendant that she no longer wanted to see or communicate with him.  In response, the defendant told Brittany that if she did not continue to communicate with him, he would post photographs of her nude on pornographic web sites, with her address and telephone number included.  Brittany subsequently blocked the defendant from her online accounts, and no additional contact occurred after December of 2008.

In 2009 (exact date unknown), the defendant initiated contact with a 14-year old girl named Josie (referred to in the PSR with the initials J.L.) on BlogTV.[2] [3] At the time, Josie was

---

[2] The 14-year old female's full name is known to the Government, but has been replaced for this public filing with the name "Josie."

[3] BlogTV is an online video service which includes a chat system.

residing in Georgia with her parents.  The defendant initially told Josie that he was 18-years old, but later admitted to her that he was 30-years old.  The defendant and Josie communicated with each other online and over the telephone several times per week over the span of several months.

At some point, the defendant requested that Josie send pictures of herself naked to him. Josie initially declined to do so; but, after increased pressure from the defendant, she used her phone camera to take and send pictures of herself naked to the defendant.  In all, Josie sent approximately 20 photographs to the defendant over the course of their "relationship."

In July of 2010, Josie told the defendant that she did not want to have any further contact with him.  A short time later, the defendant sent Josie flowers that included a card that stated that the defendant was sorry and that he would always love her.

In late July or early August of 2010, Josie received a telephone call from Rebecca, a 15-year old girl who identified herself as a friend of the defendant.[4]  Rebecca told Josie that the defendant was contemplating suicide, and she asked Josie to call the defendant.  Josie refused to contact the defendant.

In late 2009 (exact date unknown), the defendant, utilizing the screen name/user name "J.C." on MySpace, initiated contact with a 13-year old girl named Brianna (referred to in the PSR with the initials BR).[5]  At the time, Brianna was residing in Oregon with her parents.  The defendant told Brianna that he was 18-years old, and sent a picture of a teenage boy to support that claim.

---

[4] The 15-year old female's full name is known to the Government, but has been replaced for this public filing with the name "Rebecca."

[5] The 13-year old female's full name is known to the Government, but has been replaced for this public filing with the initials "Brianna."

At some point during their online communication, the defendant asked Brianna to send him a picture of herself topless. Brianna complied with this request and sent the image. After Brianna sent the picture, the defendant told her that he now wanted her to strip and masturbate for him on web cam.  When Brianna refused to do this, the defendant threatened to send Brianna's topless picture out to her friends and family on MySpace.  Fearful of her parents discovering what had occurred, Brianna agreed to make the video.

With the defendant watching, Brianna disrobed and sat naked in front of her web cam. The defendant then directed her to fondle her breasts and masturbate, which Brianna did.  At one point, the defendant directed Brianna to insert her finger into her vagina.  The event lasted approximately one hour and ended only after Brianna told the defendant that she had to go.

Brianna subsequently reported the incident to her mother, and her mother, in turn, notified law enforcement.  An investigation was commenced by the Oregon Department of Justice on December 7, 2009.  Through this investigation, law enforcement agents discovered that the IP address used during one of the final online communications between Brianna and "J.C." was, in fact, assigned to an individual by the name of "Ron Seiver," located at 1042 US Highway 67, Roseville, Illinois 61473.[6]

On January 7, 2010, the defendant, utilizing the screen name/user name "David Smith" on Facebook.com, sent a link via Facebook.com to the stepmother of a 13-year old girl that contained pornographic images of the 13-year old girl.[7]  The images were located on the yfrog.com website.  The link was accompanied with the following message: "is Jessica  ur

---

[6] The defendant resided at 1042 US Highway 67, Roseville, Illinois, in 2009.

[7] The 13-year old female's full name is known to the Government, but has been replaced for this public filing with the name "Jessica."

-5-

daughter? U need 2 tell dat slut 2 stop getting naked on cam on blogtv on msn 4 ppl. she also say she had sex over 100 times since she was 9 yrs old."

The incident was subsequently reported to the London Police Services (LPS) in Ontario, Canada, where the girl and her step-mother resided, and an investigation was commenced. On January 11, 2010, a detective with the cyber crimes unit for the LPS, accessed the yfrog.com website that contained the photographs of the 13-year old victim and noted that the photographs appeared to be still images from an audio video file that was 10 minutes and 13 seconds in duration.

On April 6, 2010, Frontier Communications advised that at the time the images were uploaded to the yfrog.com site on January 7, 2010, from IP address 74.36.163.43, the subscriber assigned to that IP address was an individual by the name of "Ron Seiver," located at 1042 US Highway 67, Roseville, Illinois 61473.

Based on this information, the ICE office in Springfield, Illinois, assumed the investigation, which eventually led to a search of the defendant's residence in Roseville, Illinois, on August 24, 2010. During that search, law enforcement agents located and seized a laptop computer and a thumb drive from the defendant's bedroom. Located on those computer devices were a total of 119 images and 34 video files of child pornography, including images of children in bondage and children under the age of 12. Included with these were videos and images of the defendant's sexual encounters with Brittany, the 15-year old girl from Illinois. The defendant even had a picture of Brittany's high school identification card on the same thumb drive as the child pornography.[8]

---

[8] The defendant admitted to the agents that he had sex with Brittany on at least two occasions.

The agents also located a bag of Brittany's underwear in a backpack that was found in the defendant's bedroom closet.  A forensic examination of the defendant's thumb drive also revealed contact between the defendant and Josie, the 14-year old girl from Georgia.   The defendant had saved three photographs of Josie on the thumb drive, which included images of Josie's breasts and genitalia.

The defendant was subsequently arrested and charged in this Court with Possession of Child Pornography (Count I) and Sexual Exploitation of a Child (Count II).  On May 13, 2011, the defendant pled guilty to both counts.

During the summer of 2011, several handwritten letters that were either sent from the defendant or to the defendant while he resided at the Mercer County Jail were intercepted by jail staff.  One letter, which was sent to the defendant on June 4, 2011, caught the attention of jail staff because it appeared to be written by a high school girl.  In the letter, the girl wrote that she had just attended her prom dance and was getting ready to graduate. At several points in the letter, the girl wrote that she loved the defendant and that she would be waiting for him when he was released from custody.

Law enforcement agents identified the sender of the letter as an 18-year old female named Vanessa..[9]  Law enforcement agents interviewed Vanessa on October 3, 2011, at the home she shared with her parents in Illinois.  During the interview, Vanessa told agents that she had first met the defendant in a Yahoo! Chat group entitled "teens" when she was 17-years old. Vanessa stated that she had informed the defendant that she was 17-years old when they met online.

---

[9] The 18-year old female's full name is known to the Government, but has been replaced for this public filing with the name "Vanessa."

During their discussions online, the defendant told Vanessa that he wanted to meet her in Chicago; but a personal meeting never took place.  Vanessa told agents that the defendant asked her if she was a virgin and if she wanted to loose her virginity to him.  She also stated that the defendant offered to send her photographs of his penis.

After the defendant's arrest in August of 2010, the defendant continued communicating with Vanessa over the telephone.  The last telephone call Vanessa received from the defendant occurred on September 30, 2011, just 3 days before Vanessa was interviewed by law enforcement agents.

Another letter intercepted by jail staff was written by the defendant to his sister on July 7, 2011.  In the letter, the defendant wrote out a four page message which he directed his sister to retype and send to a girl named Rebecca via Facebook.com.

In the message to Rebecca, the defendant referred to Rebecca as "my whore."  At one point in the message, the defendant referenced Josie, the 14-year old girl from Georgia whom he had met on BlogTV.[10]  He warned "Rebecca" that "[Josie] told the cops about you."

At one point in the message to Rebecca, the defendant wrote about hiring her to be his "Mexican maid."  The defendant wrote:

> *How are we ever going to be together if you keep doing stuff like that?  I guess I can just hire you to be my maid.  Mexican chicks are good at that kinda stuff right?  You have to wear one of those French maid uniforms though.  You might as well look good while you're being my maid.*

At another point in the message, the defendant asked Rebecca to send pictures of herself to him, and warned her that she "better not have any tattoos."  The defendant ended the message by telling "Rebecca" that he loved her and instructing her to "stay away from boys."

---

[10] Rebecca and Josie were aware of each other through online communication.

Through investigation, law enforcement agents were able to identify Rebecca as a 16-year old girl who currently resides in Florida with her parents.[11]  On September 27, 2011, agents interviewed Rebecca at her home with her mother present.

During the interview, Rebecca told agents that she first met the defendant on BlogTV when she was 13 or 14-years old.  She stated that the defendant would watch her on web cam, and had in the past asked her to strip for him on web cam.  Rebecca also stated that the defendant "likes teenagers" and had sent her links to websites that contained child pornography.[12]

Rebecca also told agents that the defendant was communicating with a 15-year old girl named "Josie."[13]  Rebecca stated that "Josie" had called her and asked her what she knew about the defendant.

Rebecca stated that since his arrest, the defendant had been calling her from the Mercer County Jail.  The last telephone call Rebecca received from the defendant occurred on September 26, 2011, the day before Rebecca was interviewed by law enforcement agents.

After their interview with Rebecca, law enforcement agents acquired recordings of the jail calls made by the defendant from the Mercer County Jail.  The recordings covered the period between September 27, 2010, and July 17, 2011.  A review of the recorded calls revealed that, during that period of time, the defendant made dozens of prepaid telephone calls from his jail cell to minor females, including Rebecca.

---

[11] The 16-year old female's full name is known to the Government, but has been replaced for this public filing with the name "Rebecca."

[12]  In her interview, Rebecca referenced two websites in particular: "4chan" and "motherless.com."

[13] Rebecca referred to Josie by her first name only.

During one call made to Rebecca on October 15, 2010, the defendant, through the following exchange, asked Rebecca to text Josie:

| | |
|---|---|
| Rebecca: | *Do you want me to text her?* |
| Defendant: | *Yeah.  It's kind of important.* |
| Rebecca: | *Probably not, but I'll do it.* |
| Defendant: | *Oh, it is.  Trust me.* |
| Rebecca: | *To you.* |
| . . . | |
| Defendant: | *Don't be jealous.  It has nothing to do with any of that shit. You don't need to be jealous about it.* |

Later on during that same recorded telephone call, Rebecca can be heard making contact with Josie via text messaging.  The following exchange takes place between the defendant and Rebecca:

| | |
|---|---|
| Rebecca: | *She said, hi.* |
| Defendant: | *Oh shit.* |
| Rebecca: | *Now what?* |
| Defendant: | *Um, just ask her, say this is Josie right?* |
| Rebecca: | *Yeah.  She said it was.* |
| Defendant: | *Are you sure?* |
| Rebecca: | *Yes.* |
| Defendant: | *Gotta make sure. UI* |
| Rebecca: | *I'm positive. Jesus.* |
| Defendant: | *Tell her, um, the cops might go talk to her.* |
| Rebecca: | *So you're a rapist?* |
| Defendant: | *No, I don't think so.* |
| Rebecca: | *Hold on.* |
| Defendant: | *Just tell her that, and tell her that she doesn't have to talk to them if she does not want to, they can't make her talk to them.* |
| Rebecca: | *UI.  Okay.* |

One of the other minor females the defendant called from his jail cell was a 14-year old girl named Morgan, who currently resides in Massachusetts with her parents.[14]  During one of

---

[14] The 14-year old female's full name is known to the Government, but has been replaced for this public filing with the name "Morgan."

the recorded telephone calls, the defendant can be heard telling the 14-year old girl that he loves her, and asking her to wait for him.

On October 4, 2011, agents interviewed Morgan at her home with her father present. During the interview, Morgan told agents that she first met the defendant in the "Juniors" section of BlogTV.[15]  Morgan stated that the defendant knew she was 14-years of age at the time they met online.  They chatted several times after that on the BlogTV website, as well as through MSN Messenger.

Morgan also told agents that at one point the defendant asked her to access Josie's BlogTV account and view Josie's profile information.  Morgan stated that she did this.

This event was captured in one of the defendant's recorded jail calls made to Morgan on January 17, 2011.  In that call, the defendant can be heard instructing Morgan to access Josie's BlogTV and MSN accounts.  The defendant provides Morgan with Josie's usernames and passwords.  At one point, the defendant asks Morgan to read Josie's e-mails, take screen shots of those e-mails, and send those screen shots to his e-mail account because "she is fucking lying about me."[16]

## II.    ARGUMENT

### A.  The Information Included In The Offense Conduct Section Of The PSR is Reliable

The defendant makes several fact based objections to information contained in the Offense Conduct Section of the PSR, arguing that the information lacks sufficient indicia of reliability to

---

[15] The BlogTV website has two separate sections, one for adults entitled the "Seniors" section, and one for minors entitled the "Juniors" section.

[16] The Government intends to admit at the sentencing hearing the recordings and transcripts of this and other telephone calls made by the defendant to minor females from his jail cell.

support its probable accuracy.  In particular, the defendant objects to the inclusion in Paragraph 10 of information alleging that he threatened to post nude photographs of Brittany on pornographic web sites, as well as to the entire content of Paragraphs 11 and 12, denying that he ever had contact with Josie or Brianna.  (Defendant's Sentencing Memorandum, pg. 2)

The Government intends to present at the sentencing hearing the testimony of the law enforcement agents who interviewed Brittany, Josie, and Brianna.  Each witness will testify about the information they acquired from these minor females during their interviews with them.  The agents memorialized the information they acquired through these interviews in their Reports of Interview.  The information contained in the The Offense Conduct section of the PSR is based on these Reports of Interview.

The Criminal Code places no limitation on information a court may consider with respect to the background, character, and conduct of a person convicted of an offense for purposes of sentencing, as long as the information presented has a sufficient indicia of reliability to support its probable accuracy.  *United States v. Hardamon*, 188 F.3d 843, 849 (7th Cir. 1999), *citing 18 U.S.C* § 3577; and *United States v. Are*, 590 F.3d 499, 521 (7 th Cir. 2009) (court does not have to rely solely on admissible evidence, but the evidence must be reliable). Hearsay is admissible as long as it is reliable.  *United States v. Edwards*, 115 F.3d 1322, 1326 (7th Cir. 1997). In *United States v. Salinas*, the Seventh Circuit held that when a court relies on the PSR for facts relevant to sentencing, the defendant bears the burden of showing that they are unreliable, and that it is not enough simply to deny the facts, "[the defendant] must produce some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Salinas*, 365 F.3d 582, 587-588 (7th Cir. 2004).

In this case, the evidence contained in Paragraphs 10, 11 and 12 of the PSR, is not only reliable, it is corroborated, and fits squarely within the modus operandi of this defendant.  For example, we know that the defendant had photographs of Brittany naked in his possession.  Not only were these images found on his thumb drive, but the defendant admitted to law enforcement that he possessed them.  Brittany told agents during her interview that the defendant had threatened to post some of these images on the internet if she ended their "relationship."  Why would she make something like this up?  Especially when everything else she stated during her interview was corroborated by the defendant's own admissions to law enforcement.

We also know that the defendant knew and communicated with Josie.  Agents found three photographs of Josie's naked body on the defendant's thumb drive, right next to the pictures of Brittany.  Moreover, the defendant mentions Josie in letters he sent from jail, as well as during recorded telephone conversations he had from his jail cell.  In one conversation, he even directed Morgan to access Josie's online accounts to spy on her.  The defendant had not only Josie's user names for these accounts, but also her passwords.

Finally, we know that the activity that the defendant engaged in with Brianna fits the defendant's modus operandi; namely, meeting young girls online, befriending them, convincing them to take photographs and or videos of themselves naked, and threatening to expose them to others if they did not continue to play along.  Moreover, when the Oregon Department of Justice conducted their investigation, they discovered that the IP address used during one of the online communications between Brianna and the defendant was, in fact, assigned to "Ron Seiver"at 1042 US Highway 67, Roseville, Illinois 61473, the residence the defendant shared with his parents.  An IP address is like a trail of crumbs leading you inexorably back to the scene of the crime.

**B.  The Sentencing Guidelines are Reasonable in Seiver's Case**

The defendant urges the Court to find the child pornography sentencing guidelines "unreasonable" and requests a 60% downward variance from the Guideline range.  (Defendant's Sentencing Memorandum, pgs. 3 through 5)  In support of this request, the defendant argues that the child pornography guidelines lack an "empirical basis," and suggests that Congress, and not the Sentencing Commission, are responsible for shaping them.  (Defendant's Sentencing Memorandum, pgs. 3 and 4)   The defendant's argument attempts to set aside the constitutional duty bestowed on Congress to set sentencing policy; Supreme Court authority, including *Kimbrough*, and the extensive attention that Congress and the Commission have devoted to developing the guidelines for child pornography offenses.  While the defendant cites several cases from other circuits, the Seventh Circuit has repeatedly rejected claims such as these.

In a recent Seventh Circuit decision, the Court of Appeals upheld a 450-month prison sentence for Mark Huffstatler, who took 16 nude photographs of a 14-year-old boy after molesting him.  *United States v. Huffstatler*, 571 F.3d 620, 621 (7th Cir. 2009).   Huffstatler's argument was that because U.S.S.G. §§ 2G2.1 - 2.2 were crafted without the benefit of the Commission's usual "empirical approach," they were invalid and the court was obligated to sentence him below the guidelines range. Huffstatler argued that "the methodological flaws that supposedly run through the child-pornography guidelines invalidate them entirely.  Thus, . . . not only may a district court sentence below the child-exploitation guidelines based on policy disagreements with them, it must."  *Id.* at 623.   In making this argument, Huffstatler relied on *Kimbrough*.   The Seventh Circuit disagreed with Huffstatler,

> His argument is based on analogy to the crack guidelines, yet those guidelines remain valid, even after *Kimbrough. See United States v. Roberson*, 517 F.3d 990, 995 (8th Cir. 2008). Judges are not required to disagree with them; a

within-guidelines sentence for a crack offense may be reasonable. *Id.*; see also *United States v. Lopez*, 545 F.3d 515, 516-17 (7th Cir. 2008) (affirming a within-guidelines sentence for possession with intent to distribute crack). The child-exploitation guidelines are no different: while district courts perhaps have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines, as with the crack guidelines, they are certainly not required to do so.

*Id.* at 623-24.

The Seventh Circuit has also expressed its frustration with defendants shifting the purpose of a sentencing hearing from the defendant's conduct to the history of the sentencing guidelines. "We do not think a judge is required to consider... an argument that a guideline is unworthy of application in any case because it was promulgated without adequate deliberation. He should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline." *United States v. Aguilar-Huerta*, 576 F.3d 365, 367 (7th Cir. 2009).

In support of his argument, the defendant in the current case relies heavily on case law out of the Second Circuit. In *United States v. Dorvee*, the Court of Appeals for the Second Circuit overturned a within guidelines range sentence under U.S.S.G. § 2G2.2, holding that it was substantively unreasonable, and criticizing the lack of an "empirical data" foundation for the guideline. *United States v. Dorvee*, 604 F.3d 84, 95 (2nd Cir. 2010). The Seventh Circuit, however, has specifically distinguished the Second Circuit's rationale rejecting section 2G2.2 because it was "not the product of the Sentencing Commission's usual empirical studies and independent policy judgment." *United States v. Mantanes,* 2011 WL 102593, *4 -5 (7th Cir. Jan. 11, 2011) distinguishing *Dorvee*. The Court of Appeals for the Seventh Circuit has held that "it is ultimately for Congress and the Commission to consider these concerns . . . Unlike the Second Circuit, we apply a presumption of reasonableness to a within-guideline sentence, and it is up to the defendant

to overcome this presumption." *Id. citing United States v. Coopman*, 602 F.3d 814, 819 (7th Cir. 2010); *United States v. Blue*, 453 F.3d 948, 952 (7th Cir.2006).

In upholding a guideline sentence from this district by United States District Court Judge Joe Billy McDade, the Seventh Circuit stated, "we have repeatedly rejected challenges to sentencing based solely on policy disagreements with the child pornography guidelines." *United States v. Freeman* 2011 WL 588837, *2 (7th Cir. Feb. 18, 2011) (slip opinion) citing *Coopman*, 602 F.3d at 819; *Huffstatler*, 571 F.3d at 624. The Court of Appeals reiterated that "any ultimate solution is the responsibility of Congress and the Sentencing Commission, not the courts." *Id. citing Mantanes*, 2011 WL 102593, at *4.

Furthermore, the Seventh Circuit encourages courts to sentence within the guidelines range to avoid disparity between similarly situated defendants appearing before different courts. "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose ..., the more disparity there will be. A sentence within a properly ascertained range therefore cannot be treated as unreasonable by reference to § 3553(a)(6)." *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008) (citing *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006)).

Finally, the Seventh Circuit has recognized the goal of eliminating the market for child pornography materials by imposing lengthy sentences on those who fuel the market.

The overarching goal of the sentencing guideline enhancements is to weaken the market for child pornography that "keeps the producers and distributors of this filth in business." (citing *United States v. Ellison*, 113 F.3d 77, 81 (7th Cir. 1997)). *See also United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001); *United States v. Turchen*, 187 F.3d 735, 737 n. 2 (7th Cir. 1999)). Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is

-16-

for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.

*United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006).

These policy arguments attacking the rationale behind the child pornography guidelines distract the court from the primary focus of the sentencing hearing, that is the criminal conduct of the defendant, his effect on the victims involved, and the impact his crimes have had on the community and public.  In finding that the district court abused its discretion in imposing a sentence for possession of child pornography so low that it failed to recognize the impact to the children involved, Judge Posner reiterated that the sentences for child pornography crimes are aimed at eliminating the market demand for these heinous images,

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. *E.g., Osborne v. Ohio*, 495 U.S. 103, 109-11, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006); *United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001); *United States v. Angle*, 234 F.3d 326, 337-38 (7th Cir. 2000). Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).

The defendant's request in the current case for a 180-month term of imprisonment neither reflects the seriousness of this crime nor reflects its impact to the children who were victimized for the prurient interests of the defendant.

### C. The Two-level Enhancement Under U.S.S.G. § 2G2.2(b)(2) For Receipt And Possession Of Material Involving Prepubescent Minors Is Appropriate

In his Sentencing Memorandum, the defendant objects to the imposition of an upward adjustment under U.S.S.G. § 2G2.2(b)(2) for possession and receipt of materials involving prepubescent minors or minors who had not attained the age of 12 years because it amounts to impermissible double counting.  (Defendant's Sentencing Memorandum, pg. 3) However, the defendant cites no case law to support this objection, nor can the Government find any instance where the Seventh Circuit Court of Appeals has held that the two-level enhancement under U.S.S.G. § 2G2.2(b)(2) is inappropriate or amounts to impermissible double counting.

The crime of Possession of Child Pornography includes the element that the defendant must possess "an image of child pornography" as defined under 18 U.S.C. § 2256(8).  18 U.S.C. § 2256(8) defines child pornography as any visual depiction that involves the use of a "minor" engaged in sexually explicit conduct.   A "minor" is defined under 18 U.S.C. § 2256(1) as "any person under the age of eighteen years."  In the current case, of the 119 images of child pornography the defendant possessed, 15 involved children under the age of 12.

A criminal defendant can be convicted of Possession of Child Pornography if he possesses images of pubescent or even post-pubescent teenage children (i.e., typically children 12 years of age and older).  There is no requirement that the images depict children under the age of 12.  So, when a criminal defendant, like the defendant in this case, possesses images of pre-pubescent children and/or children who have not attained the age of 12 years, that is a particularly unique and aggravating aspect of the offense, which is appropriately accounted for with a two-level increase in the defendant's offense level.

-18-

### D.  The Four-level Enhancement Under U.S.S.G. § 2G2.2(b)(4) For Material That Portrays Sadistic Or Masochistic Conduct Is Appropriate

The defendant next objects to the four-level enhancement provided under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other depictions of violence, arguing that it is improper because it impermissibly double-counts conduct already taken into account in the base offense level.  However, the Seventh Circuit has held that a four-level enhancement for the possession of images of child pornography that  depict sadistic, masochistic, or violent conduct is appropriate and does not amount to impermissible double counting.  *United States v. Myers*, 355 F.3d 1040, 1044 (7th Cir. 2004).

Among the images of child pornography that were found on the defendant's computer devices was an image of a prepubescent girl with her legs spread apart, bound by duct tape, being raped by an adult male.  Another image depicts a prepubescent girl having her head held back by her hair by an adult male who is raping her.  There were several other images found that depict young girls being raped by adult men.

Although the terms "sadistic" and "masochistic" are not defined in the sentencing guidelines, the Seventh Circuit has held that "sadistic and masochistic conduct includes sexual gratification which is purposefully degrading and humiliating, [and] that causes mental suffering or psychological or emotional injury in the victim." *United States v Turchen*, 187 F.3d 735, 739 (7th Cir. 1999).  The Seventh Circuit has also held that because "vaginal intercourse between a prepubescent girl . . . with an adult male would necessarily cause pain to the girl, [it] therefore [falls] within the enhancement as conduct that [is] 'sadistic' or 'otherwise violent.'" *Myers* at 1043. The images and video in this case clearly qualify as sadistic, masochistic and violent under these definitions.

-19-

The application of a four-level enhancement in this case does not amount to impermissible double counting. As previously discussed, to be guilty of either receipt or possession of child pornography, a defendant must have received/possessed images of "minors" engaged in "sexually explicit conduct." *See* 18 U.S.C. §§ 2252A(a)(2)(A) and (a)(5)(B). Sexually explicit conduct includes the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2). Therefore, images of a minor simply displaying their genitals in a lascivious manner, by itself, would violate the statute, regardless if the minor is prepubescent, and regardless if the image depicts violent, sadistic, or masochistic conduct.

In this case, it is the conduct depicted in the images of the young girls being sadistically raped, among others, that justifies the four-level enhancement. "Accordingly, the conduct for which the four-level enhancement [is] applied [under U.S.S.G. § 2G2.2(b)(4)] is distinct from that which form[s] the base offense and which support[s] the two-level enhancement [under U.S.S.G. § 2G2.2(b)(2)" for the child being prepubescent. *Myers* at 1044. Consequently, there is no impermissible double counting, and the four-level enhancement is appropriate.

### E. The Two-level Enhancement Under U.S.S.G. § 2G2.2(b)(6) For Use Of A Computer In The Commission Of The Crime Is Appropriate

The defendant argues that the two-level enhancement provided under U.S.S.G. § 2G2.2(b)(6) for use of a computer in the offense is unreasonable and amounts to impermissible double counting. However, the Seventh Circuit has repeatedly held that the two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for the use of a computer in the commission of a child pornography offense is appropriate and does not amount to impermissible double counting. *United States v. Tenuto*, 593 F.3d 695, 698-699 (7th Cir. 2010).

-20-

The use of a computer is not an element of the offense of receipt or possession of child pornography.  If this case were to have gone to trial, the Government would have had to establish that the defendant knowingly possessed images of child pornography, that such images had been transported in interstate commerce *by any means*, and that the defendant knew that such items constituted child pornography.  18 U.S.C. § 2252A(a)(5)(B).

Although using a computer to download and possess child pornography is perhaps the most common way of violating this statute, it is not the only way.  Consequently, the fact that the defendant used a laptop computer as well as a thumb drive to acquire and maintain approximately 119 images of child pornography, as well as 34 videos of child pornography, is a s specific offense characteristic that applies to the defendant's conduct. *Tenuto*, 593 F.3d at 699.  Therefore, the two-level enhancement under U.S.S.G. § 2G2.2(b)(6) is appropriate.

### F.  The Five-level Enhancement Under U.S.S.G. § 4B1.5(b)(1) For Engaging In a Pattern Of Activity Is Appropriate

The defendant argues that the five-level enhancement provided under U.S.S.G. § 4B1.5(b)(1) for engaging in a "pattern of activity" constitutes impermissible double counting because it comes after the defendant received another five-level increase under U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual exploitation of Brittany, the 15-year old female from Illinois who the defendant had sex with on at least two occasions.  However, the application of both enhancements does not constitute impermissible double counting because they each punish distinct conduct: 1) the sexual exploitation of Brittany (covered under U.S.S.G. § 2G2.2(b)(5)); and 2) the sexual exploitation of Brittany and the other minor females for the purpose of producing child pornography (U.S.S.G. § 4B1.5(b)(1)).

-21-

Under U.S.S.G. § 2G2.2(b)(5), a five-level enhancement is assessed whenever "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor."  The Application Notes for this sentencing provision defines "pattern of activity" as "any combination of two or more separate instances of the sexual abuse or exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." App. Note 1, U.S.S.G. § 2G2.2. A five-level enhancement can also be assessed under U.S.S.G. § 4B1.5(b)(1) for a "pattern of activity" involving "prohibited sexual conduct." The production of child pornography is a type of "prohibited sexual conduct," and the enhancement can be applied if, on at least two separate occasions, the defendant engaged in this conduct with a minor." App. Note 4(A) and (B), U.S.S.G. § 4B1.5.

The enhancements under U.S.S.G. § 2G2.2(b)(5) and U.S.S.G. § 4B1.5(b)(1) address two distinct aspects of the defendant's conduct.  On at least two occasions the defendant had sexual intercourse with Brittany, a 15-year old girl, that he photographed and/or videotaped; therefore a five-level enhancement under U.S.S.G. § 2G2.2(b)(5) is appropriate.  On at least three occasions with three different minor females (Brittany, Josie, and Brianna), the defendant engaged in a pattern of activity that involved the production of child pornography (by coaxing the girls to take and send images and videos of themselves naked); therefore, a five-level enhancement under U.S.S.G. § 4B1.5(b)(1) is appropriate.  Two distinct enhancements based on two distinct tracks of conduct. *United States v. Schimeilski*, 408 F.3d 917,  920 (7th Cir. 2005) (When two enhancements address distinct aspects of the defendant's conduct, the application of both does not constitute double counting); *see also United States v. Blum*, 534 F.3d 608, 612-613 (7th Cir. 2008).

**WHEREFORE**, the Government moves the Court to deny the objections to the PSR made by the defendant and further deny the defendant's request to sentence him below the Sentencing Guidelines range, and instead requests that the Court sentence the defendant to a guideline range sentence of 480 months.

Respectfully submitted,

James A. Lewis
United States Attorney

By:      /s/ Michael D. McCoy
Michael D. McCoy
Assistant United States Attorney
1830 Second Avenue, Suite 320
Rock Island, Illinois 61201
Telephone (309) 793-5884

## CERTIFICATION OF SERVICE

**I HEREBY CERTIFY** that on November 29, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant:

      George Taseff
      Counsel for Ronald Seiver

                           /s/ Michael D. McCoy
                          Michael D. McCoy
                          Assistant U.S. Attorney